UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:06-CR-103 |
| | ) | (VARLAN/SHIRLEY) |
| RIGOBERTO M. SANCHEZ, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court, as may be appropriate. The Defendant is charged in a one-count Indictment [Doc. 1], in which the Defendant is charged with conspiring to distribute 500 grams or more of methamphetamine, five kilograms or more of cocaine, and 100 kilograms or more of marijuana, all in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(a)(1)(A). The Defendant has filed a Motion to Dismiss the Indictment [Doc. 28], to which the Government has responded in opposition.

The parties appeared before the Court for a motion hearing on December 20, 2010. Assistant United States Attorney Alexandra Hui was present representing the Government. Attorney Mark E. Brown was present representing the Defendant, who was also present. The Court heard the evidence presented and the arguments of the parties on the motion. The Court took the motion under advisement on December 21, 2010.

At the hearing the Court heard testimony on the issue of dismissing the Indictment based on

1

a violation of the Defendant's Speedy Trial Rights.

## I. DECEMBER 20, 2010 EVIDENTIARY HEARING

### (A) Testimony of Special Agent Kenneth E. Moore

The Government called Special Agent Kenneth E. Moore to testify in this matter. On direct examination, Agent Moore testified that he had worked as an Federal Bureau of Investigation ("FBI") agent for 22 years. Agent Moore stated that he had been assigned to the Joint Terrorism Task Force in 2005. Before this assignment, Agent Moore said that he worked on the Drug Squad, which led to his involvement with the Defendant.

Agent Moore testified that he was the co-agent investigating the Defendant's case in 2002. In August 2002, Agent Moore stated that the FBI wire-tapped the Defendant's cell phone pursuant to court order. Agent Moore said that the Defendant's cell phone was tapped between 2002-03. Agent Moore testified that he corroborated the information obtained as a result of the wiretap by means of surveillance and controlled buys. Agent Moore testified that he approached the Defendant to solicit his cooperation. At this time, Agent Moore said that he explained to the Defendant the charges and some evidence against him.

Agent Moore testified that the Defendant was not charged under an indictment, but agreed to plead guilty to an information. The Government introduced the August 2003, tow-count Information, which was admitted as Exhibit 1. Agent Moore stated that by February 2003, the Defendant was aware of the charges against him. Agent Moore testified that the Defendant signed a plea agreement and was cooperating to get reduced "charges." Agent Moore stated that he had routine contact with the Defendant at this time. Agent Moore testified that the Defendant was

cooperating by performing controlled buys from others.

Agent Moore testified that the Defendant had a November 2004 court appearance, at which time he failed to appear. Agent Moore stated that his last contact with the Defendant was in September 2004. Agent Moore testified that he tried to locate the Defendant by contacting his girlfriend and her parents. Agent Moore stated that these attempts were unsuccessful. Agent Moore testified that he received information regarding the Defendant's whereabouts from agents in Los Angeles, California. A follow-up investigation on this information proved negative. Agent Moore testified that the Defendant's sister, Himelda, was arrested in Salem, Oregon in 2004. After speaking with the Defendant's sister, Agent Moore stated that she made no mention of the Defendant living in New Mexico, and all leads she provided proved negative.[1] Agent Moore testified that he pursued every lead in order to locate the Defendant, but all leads proved negative.

At this point, Agent Moore testified that he began a fugitive investigation. Agent Moore testified that a fugitive investigation is conducted by: (1) developing lead information and (2) by entering information into the National Crime Information Center ("NCIC") database. Agent Moore explained that a subject's name, alias, date of birth, and fingerprints, as well as any other identifying information, such as scars and tattoos, will be entered into the NCIC database. Agent Moore testified that the Defendant's alias and fictional social security numbers were unknown to law enforcement at the time the Defendant's information was entered into the NCIC database. Agent Moore testified that based on the fact that he had no information, he could not just "comb" the

---

[1] The Defendant states that "[u]pon information and belief, the Defendant asserts at the time of [the Defendant] sister's arrest, Ms. Briano told the FBI that her brother was living in New Mexico." [Doc. 29 at 2]. The Court finds Agent Moore's testimony that the Defendant's sister failed to provide information regarding the Defendant residing in New Mexico credible on this point.

country for leads.

Agent Moore testified that in the summer of 2006, the 2003 Information against the Defendant was dismissed. Agent Moore stated that in August 2006, the Indictment, that is the basis of this case, was returned by the grand jury.

On cross-examination, Agent Moore testified that the Defendant was aware of the Information filed against him. Agent Moore stated that he was unaware if the Defendant knew of the 2006 Indictment. Agent Moore testified that drugs were seized as a result of his investigation, but he is uncertain if that evidence still exists. Agent Moore explained that sometimes drugs are destroyed from evidence, and he cannot say whether the drug evidence in this case exists today. Agent Moore testified that the Defendant's picture was sent to California, but is uncertain if his picture was sent to Oregon or New Mexico. Agent Moore stated that only special kinds of cases go on a "Most Wanted" FBI poster.

On re-direct, Agent Moore stated that all leads were pursued before entering the Defendant's information into the NCIC database. Agent Moore testified that a picture of a suspect alone would not help without that suspect's identifiable information. In this case, Agent Moore stated that the Defendant's identifiable information was entered into the NCIC database.

## II. FINDINGS OF FACT

The Defendant was approached by Special Agent Moore of the FBI Drug Task Force in February 2003, as a result of information he had obtained through a court-ordered wiretap of the Defendant's cell phone. After Agent Moore presented the charges and some the evidence against the Defendant, the Defendant agreed to cooperate in the ongoing investigation of his co-conspirators.

Subsequently, in July 2003, the Defendant signed a written plea agreement, in which he pled guilty to a two-count Information, rather than be charged in the indictment stemming from ongoing investigation. In August 2003, the Information was filed against the Defendant in Case No. 303-cr-102.

The Defendant continued to work with Agent Moore, until Agent Moore lost contact with the Defendant around September 2004. The Defendant's initial appearance on the Information and his change of plea hearing were scheduled for November 29, 2004. The Defendant fled the jurisdiction, and as a result, failed to appear in court on November 29, 2004.

Agent Moore pursued the Defendant's whereabouts after he failed to appear in court. Agent Moore pursued leads from California and Oregon, all of which failed to result in any information regarding the Defendant's whereabouts. Additionally, the Defendant's information was entered into the National Crime Information Center database.

By 2006, the Defendant's whereabouts was still unknown to law enforcement. As a result, the district court granted the Government's motion to unseal and to dismiss the information without prejudice in the case styled Case No. 3:03-cr-102.[2]

A grand jury returned a one-count Indictment against the Defendant on August 1, 2006. The Indictment charges the Defendant with conspiring to distribute and to possess with intent to distribute 500 grams or more of methamphetamine, five kilograms or more of cocaine, and 100 kilograms or more of marijuana, all in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(a)(1)(A). These charges are based on the same conduct underlying the charges against the Defendant in the

---

[2]The United States mistakenly referred to the charging instrument as the indictment. The district court recognized that the Government mistakenly referred to the instrument as the indictment and ordered that the information be dismissed without prejudice.

2003 Information.

In June 2010, the Defendant was arrested in California on state charges, and on July 1, 2010, the Defendant was arrested on the federal arrest warrant for this Indictment. The Defendant appeared before this Court on July 29, 2010.

### III. POSITION OF THE PARTIES

The Defendant argues that the Indictment, filed on August 1, 2006, should be dismissed with prejudice on grounds that it violates the Defendant's Sixth Amendment right to a speedy trial. [Docs. 28 and 29]. Specifically, the Defendant asserts that he has been deprived of his right to a speedy trial based on the four-factor balancing test established by the Supreme Court in Barker v. Wingo: "length of the delay, the reason for the delay, the Defendant's assertion of his right, and prejudice to the Defendant." 407 U.S. 514, 530 (1972). First, the Defendant contends that his defense has been prejudiced by the four year delay between the Indictment and his arrest. [Doc. 29 at 8]. The Defendant maintains that the alleged conduct, which is the basis of the Indictment in the present case, occurred nine years ago and that memories fade over such length of time. [Doc. 29 at 8]. Second, the Defendant asserts that the reason for the delay in bringing him before the Court is entirely the result of the Government's conduct. [Doc. 29 at 8]. The Defendant contends that Federal authorities apparently made no efforts to find him and bring him before this Court until he was detained on California state charges four years after the return of the Indictment in this case.

The Government responds that no violation of the Defendant's Sixth Amendment right to

a speedy trial occurred. [Doc. 32 at 4]. Specifically, the Government contends that the application of the four-factor balancing test established in Barker v. Wingo demonstrates that the Defendant has not been deprived of his right to a speedy trial. 407 U.S. at 531. First, while the Government concedes that the length of time between the return of the Indictment in August 2006 and the Defendant's arrest in July 2010 was presumptively prejudicial, it maintains that this delay is tempered by consideration of the remaining Barker factors. [Doc. 32 at 5]. Second, the Government asserts that the Defendant's evasion of prosecution is the reason for the delay. [Doc. 32 at 6]. Third, the Government argues that the Defendant's assertion of his speedy trial rights weighs against him because he was responsible for the delay. [Doc. 32 at 7]. Fourth, the Government asserts that the Defendant is not prejudiced by the delay, because it was his decision to flee the resolution of the charges against him. [Doc. 32 at 8].

### IV. ANALYSIS

For reasons more fully explained below, the Court finds that the four-factor balancing test established in Barker v. Wingo does not weigh in favor of the Defendant's argument that his Sixth Amendment right to a speedy trial was violated. Accordingly, the Court recommends that the Defendant's Motion to Dismiss Indictment **[Doc. 28]** be **DENIED**.

**A. The Defendant's Sixth Amendment Right to a Speedy Trial**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const., amend. VI. In order to establish a violation of the Sixth Amendment right to a speedy trial, a four-factor balancing test must weight in a

defendant's favor: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. Barker, 407 U.S. at 531.

In Doggett v. United States, the Supreme Court further defined what a district court must balance in determining if there was a violation of the Sixth Amendment right to a speedy trial. 505 U.S. 647, 651 (1992). The Doggett Court stated that district courts must balance "whether delay before the trial was uncommonly long, whether the government or the criminal defendant is more to blame for the delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." Id. (citing Barker, 407 U.S. at 530). None of these factors alone constitute a violation of a defendant's right to a speedy trial and, are instead "related factors and must be considered together with such other circumstances as may be relevant." Barker, 407 U.S. at 533; see United States v. O'Dell, 247 F.3d 655, 667 (6th Cir. 2001). "When a defendant's constitutional right to a speedy trial has been violated, dismissal of the indictment is the only remedy even when it allows a defendant who may be guilty of a serious crime to go free." O'Dell, 247 at 677.

### (i) Length of the Delay

First, a court will consider the length of the delay. If length of the delay fails to "give rise to a presumption of prejudice, the other factors need not be considered." United States v. Graham, 128 F.3d 372, 374 (6th Cir. 1997). Generally, a delay is "presumptively prejudicial at least as it approaches one year." Doggett, 505 U.S. at 652, n.1.

In this case, the Government concedes, and therefore, the parties agree that the delay from the August 2006 Indictment to the Defendant's arrest in July 2010 is presumptively prejudicial.

8

Therefore, since the length of the delay is presumptively prejudicial in this case, the Court will continue with the remaining factors in its analysis.

**(ii) Reason for the Delay**

The Court must next consider the reason for the delay. This is an important factor in the analysis, as the Supreme Court has recognized that "[t]he flag all litigants seek to capture is the second factor, the reason for the delay." United States v. Loud Hawk, 474 U.S. 302, 315 (1986). The Government bears "the burden of excusing the delay." United States v. Brown, 498 F.3d 523, 531 (6th Cir. 2007).

When analyzing this factor, "different weights should be assigned to different reasons" offered for the delay. Barker, 407 U.S. at 531. The Supreme Court has held that

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Barker, 407 U.S. at 531 (footnote omitted).

In addition, the Sixth Circuit Court of Appeals has held that a court must consider whether a defendant's actions resulted in the delay. Brown, 498 F.3d at 531. Intentionally evading prosecution causes a defendant to be responsible for the delay, however, the government must exercise reasonable diligence in locating a defendant and informing him of the indictment against him. Brown, 498, F.3d at 349-50.

The Defendant argues that whether intentional or merely negligent, the Government was not

9

diligent in bringing him before this Court to face charges. [Doc. 29 at 9]. The Government contends that the Defendant's evasion of prosecution is the reason for the delay in bringing him before this Court. [Doc. 32 at 6].

This Court agrees with the Government that the Defendant's evasion of his prosecution is the reason for the delay in this case. The Defendant fled the jurisdiction before he was to appear in Court for an initial appearance and change of plea on November 29, 2003, based on the Information in the first case. The Defendant was aware that an Information was filed against him, on the same charges underlying the Indictment in this case, when he fled the jurisdiction. The Defendant may not use his flight to evade prosecution in the first case as a shield to prevent prosecution in this case when the Indictment charges him with the same underlying action as in the first case. See Brown, 169 F.3d at 349 (noting that "a defendant who evades prosecution is culpable in causing the delay, and the prejudice growing from such delay cannot be weighed in his favor").

The Defendant relies heavily on Doggett to support the contention that the Government ignored its obligation to prosecute him in a timely manner. In Doggett, officers were sent to arrest the defendant on conspiracy to distribute cocaine charges. 505 U.S. at 648-49. The defendant's mother informed the officers that he had left for Columbia four days earlier. Id. at 649. Subsequently, officers learned that the defendant was under arrest in Panama, but thought a formal extradition request would be futile. Id. Approximately a year after officers learned of his Panama arrest, the Defendant passed through Customs in New York City unnoticed. Id. The Court noted that the defendant's "travels abroad had not wholly escaped the Government's notice[,]" which referenced the fact that law enforcement was provided some information regarding the defendant's whereabouts. Id. At factor two in the Barker analysis, the Court found that Government

10

investigators failed to test their "progressively more questionable assumption" that the defendant was living abroad for six years. Id. at 653. The Court noted that had investigators made any inquiry into the defendant's whereabouts during this time period, they "could have found him within minutes." Id. The Court concluded that the Government's failure to make any serious effort in locating the defendant amounted to negligence.

Doggett, however, is distinguishable from the present case. In this case, Agent Moore testified that he followed up on leads received about the Defendant's whereabouts. First, Agent Moore followed-up on a lead from agents in California, which ultimately proved unsuccessful. Second, Agent Moore followed-up on a lead that he received from the Defendant's sister after her arrest in 2004, which again proved negative. Further, Agent Moore testified that he followed-up on every lead he received regarding the Defendant, all of which proved negative. Unlike in Doggett, the Agent Moore testified that the Defendant was using an alias and fictional social security number, unknown to law enforcement, and a simple inquiry into his whereabouts would not have produced his location "within minutes." Moreover, while the Defendant in Doggett was unaware of the indictment against him, the Defendant in this case knew of the pending charges against him when he fled the jurisdiction, which arguably gave him reason to want to conceal his location from law enforcement. Therefore, it is difficult for the Defendant to argue that Federal authorities made no attempt to find him for four years when he fled the jurisdiction, began using an alias unknown to law enforcement, and Agent Moore's testimony that he followed up on every lead regarding the Defendant's whereabouts. The actions taken by Agent Moore to locate the Defendant do not rise to the level of police negligence found in Doggett.

Accordingly, the Court finds that the Defendant's flight from the jurisdiction was the

reason for the delay and weighs heavily against him in this case.

### (iii) Assertion of the Right

The next factor to consider is whether the Defendant asserted his right to a speedy trial. The Supreme Court has found that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 532. The third factor cannot weigh strongly against a defendant if he had no knowledge of the federal indictment. See United States v. Schreane, 331 F.3d 548, 557 (6th Cir. 2003) (finding that if the defendant "had known of the indictment at the time the first federal detainer was lodged, then this third Barker factor would weigh heavily against him"). However, where a defendant knowingly evades charges against him, the "third factor, concerning invocation of the right to a speedy trial, [is] weighed heavily against him." Doggett, 505 U.S. at 653.

In the first case, the Defendant fled the jurisdiction before his court appearance in November 2003. While the Defendant may have been unaware of the subsequent Indictment in this case when he was arrested, he was certainly aware of the original charges contained in the Information, pending in the first case when he fled and, which charged illegal actions that are the basis of Indictment in this case. Further, the Indictment in this case does not charge the Defendant with any additional charge that was not charged in the first Information. Therefore, it is difficult to find that the fact the Defendant was unaware of the Indictment in this case could result in a failure to assert his right to a speedy trial, because it encompasses the same charges that the Defendant fled in the first case.

Accordingly, the Court weighs the Defendant's flight from the jurisdiction heavily against him regarding the invocation of his right to a speedy trial.

### (iv) Prejudice to the Defendant

Finally, the Court turns to whether there has been prejudice to the Defendant as a result of the delay. "Prejudice should be assessed in light of the interests of defendants which the speedy trial right was designed to protect." Barker, 407 U.S. at 532. A defendant must show he suffered "substantial prejudice" as a result of the delay. United States v. White, 985 F.2d 271, 276 (6th Cir. 1993) (quoting United States v. DeClue, 899 F.2d 1465, 1470 (6th Cir. 1989)). However, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." Doggett, 505 U.S. at 655.

The Supreme Court has identified three situations when determining whether a defendant suffers prejudice: (1) oppressive pre-trial incarceration, (2) anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired. Barker, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id. The Doggett Court rejected the contention that a defendant must specifically pinpoint how the delay prejudiced his defense. 505 U.S. at 655. The Court noted that "[w]hile such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of the delay." Id. at 656.

The Sixth Circuit Court of Appeals has held that "[w]hen a defendant is unable to articulate the harm caused by delay, the reason for the delay (factor 2) will be used to determine whether the defendant was presumptively prejudiced." United States v. Mundt, 29 F.3d 233, 236 (6th Cir. 1994). "A defendant who evades prosecution is culpable in causing the delay, and the prejudice growing from such delay cannot be weighed in his favor." Brown, 169 F.3d at 349.

13

The Defendant argues that his defense has been prejudiced by the four year delay because many of the alleged co-conspirators have disappeared and memories fade over time. [Doc. 29 at 8]. The Defendant further argues that the fact that memories fade over time is particularly relevant in this case because nine years have passed since the action that is the basis of this Indictment. [Doc. 29 at 8]. The Government argues that the Defendant was not prejudiced, as it was his own decision to flee the resolution of the charges that prevent swift resolution. [Doc. 32 at 7].

The Court has found above that the Defendant evaded prosecution based on the Information filed in the first case, and therefore, is the reason for the delay in this case when the Indictment is based on the same illegal conduct charged in the first case. Accordingly, the Defendant was responsible for causing the delay, and the prejudice which is a result of such a delay cannot be weighed in the Defendant's favor.

The argument that the Defendant's "co-conspirators" have disappeared does not necessarily undermine the Defendant's defense. The Supreme Court has stated that "as the time between the commission of the crime and the trial lengthens, witnesses may become unavailable or their memories fade. If the witnesses support the prosecution, its case will be weakened . . . [as] it is the prosecution which carries the burden of proof." Barker, 407 U.S. at 521. The Defendant's use of the term "co-conspirators" suggests that testimony from such individuals would regard the Defendant's alleged involvement in the drug conspiracy. Without the testimony of the "co-conspirators," the Government would have a difficult time carrying its burden of proof, which benefits the Defendant. Similarly, the fact that the "co-conspirators" memories may have faded regarding the Defendant's involvement in the alleged conspiracy nine years ago, also benefits the Defendant. See Schreane 331 F.3d at 558 (finding that "partial memory lapses of the prosecution's

key witnesses, which defense counsel was free to highlight during trial, worked to the advantage of [defendant]"). With regard to the blanket argument that "memories fade," the Defendant has failed to point to whether the memory loss occurred in Government or defense witnesses, and therefore, the Court is unable to ascertain the extent, if any, of prejudice to the Defendant.[3] See United States v. Huff, 246 F. Supp. 2d 721, 727-28 (W.D. Ky. 2003) (concluding that "conclusory statements concerning memory impairment" are not sufficient to show substantial prejudice) (internal citations and quotations omitted); United States v. Taylor, No. 3:04cr130, 2006 WL 4643321, *6 (S.D. Ohio July 31, 2006) (denying that fading memories of witnesses was prejudicial when the defendant failed to indicate "whether the witnesses who previously indicated that they had difficulty remembering were Government or defense witnesses").

Moreover, the Court has found above that the Defendant evaded prosecution based on the Information filed in the first case, and therefore, is the reason for the delay in this case when the Indictment is based on the same illegal conduct charged in the first case. Accordingly, the Defendant was responsible for causing the delay, and the prejudice which is a result of such a delay cannot be weighed in the Defendant's favor. Therefore, the fourth factor in the Barker analysis weighs against

---

[3] At the hearing, the Defendant also argued that Agent Moore does not know the location of the drug evidence against the Defendant or if this evidence has been destroyed in this case. The Defendant argued that the failure to examine and test the drugs at issue was prejudicial to his case. The Government did not concede that the drug evidence was destroyed in this case. The Supreme Court has held that "dimming memories and loss of exculpatory evidence . . . 'is the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" Doggett, 505 U.S. at 654 (quoting Barker, 407 U.S. at 532). To call the drug evidence in this case "exculpatory" is a stretch. The Defendant signed a plea agreement in the first case, in which he agreed to plead guilty to the conspiring to distribute and to possess a variety of drugs, such as methamphetamine, cocaine, and marijuana. Further, the FBI wiretapped the Defendant's cell phone to gain knowledge of the Defendant's drug activity. The fact that drug evidence in this case may not exist is beneficial to the Defendant in that it hurts the Government's ability to carry its burden of proof.

the Defendant.

Accordingly, this Court concludes that the Defendant has not suffered a violation of his Sixth Amendment right to a speedy trial.

### V. CONCLUSION

Accordingly, it is **RECOMMENDED** for the reasons set forth herein that the Defendant's Motion to Dismiss Indictment **[Doc. 28]** be **DENIED**.[4]

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.   
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).